IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AARON WILLIAMS, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No.: 1:21-cv-01988-JMC |
| MARYLAND DEPARTMENT OF HEALTH, | * | |
| | * | |
| *Defendant*. | | |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

Plaintiff Aaron Williams brings this action against Defendant Maryland Department of Health under the Rehabilitation Act of 1973 ("Rehabilitation Act") for failure to accommodate his disability, discrimination, and retaliation resulting in adverse employment actions, including his termination. *See* 29 U.S.C. § 794. Presently before the Court is Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment. (ECF No. 15). The issues have been fully briefed (ECF Nos. 15, 21, 22) and no hearing is necessary. *See* Loc. R. 105.6. (D. Md. 2021). For the reasons explained below, Defendant's Motion to Dismiss or in the Alternative for Summary Judgment, treated as a motion for summary judgment, is GRANTED.

### BACKGROUND

Plaintiff began his employment with the Maryland Department of Health ("MDH" or "Defendant") in the Division of Cost Accounting and Reimbursement ("DCAR") as an Administrative Aide on January 29, 2020. (ECF No. 15, Ex. 1 at 2; ECF No. 21 at 2). As state law requires, Plaintiff began as a probationary employee for 90 days. (ECF No. 15, Ex. 1 at 2). Fiscal Service Manager Deborah Brown-Demery supervised and directed Plaintiff's daily activities.

(ECF No. 15, Ex. 1 at 2; ECF No. 21 at 2). According to contemporaneous documentation from Ms. Brown-Demery, Plaintiff had difficulty correctly performing the essential duties of his position almost from the outset of his employment. (ECF No. 15, Ex. 1 at 2-3; ECF No. 15, Ex. 3 at 1-4).

Due to the COVID-19 pandemic, Plaintiff, along with many other DCAR staff, was placed on administrative leave beginning March 20, 2020, for a period of two weeks. (ECF No. 15, Ex. 1 at 3; ECF No. 21 at 2). Because of DCAR's important work in processing payments for health services rendered, it returned to operations on March 18, 2020, with limited staff. (ECF No. 15, Ex 1 at 3.) DCAR continued to afford Plaintiff administrative leave through May 4, 2020, and granted him permission to telework as of May 12, 2020, based on a doctor's note explaining that since he was his mother's sole caretaker, it would be risky for Plaintiff to be exposed to COVID-19. *Id.*

Because of Plaintiff's difficulties in performing his job duties and DCAR's inability to observe his performance in person, on April 28, 2020, Ms. Brown-Demery continued Plaintiff's probationary period through July 28, 2020, as documented contemporaneously in a memorandum to him. (*Id*. at 3-4; ECF No. 15, Ex. 5). Upon the July 2020 probationary deadline, Plaintiff's probation was again extended through January 27, 2021. (ECF No. 15, Ex. 1 at 4).

Throughout this probationary period, Plaintiff continued to telework during the summer and fall based on medical documentation limiting him to telework on a monthly basis due to underlying conditions that predisposed him to COVID-19 complications. (ECF No. 15, Ex. 1 at 4-6; ECF No. 15, Ex. 6-9; ECF No. 21 at 3). At the expiration of Plaintiff's September 2020 doctor's note prescribing telework, Ms. Brown-Demery contacted Plaintiff to come into the office beginning on September 24, 2020, noting that his regularly scheduled days in the office would be

2

Tuesdays and Thursdays.  (*Id*. at 5; ECF No. 15, Ex. 8).  In response, on September 23, 2020, Plaintiff submitted another doctor's note extending his telework until October 25, 2020, an accommodation which was granted by Defendant.  (ECF No. 15, Ex. 1 at 5; ECF No. 15, Ex 9).

Around this time, Ms. Brown-Demery contacted Delinda Blake, Defendant's ADA Coordinator, and Yolanda Jackson, a representative from the Office of Human Resources, to explore whether there were other ways to accommodate Plaintiff other than full-time telework. (ECF No. 15, Ex. 1 at 5-6; ECF No. 15, Ex 10 at 1). MDH personnel proposed work accommodations with several alternative schedules to limit both his time in the office and contact with other staff; MDH further suggested that Plaintiff coordinate with his physician to determine the proper personal protective equipment specific to his needs. (ECF No. 15, Ex. 10 at 2-3). Defendant emailed and asked Plaintiff for input on these proposals beginning October 13, 2020. *Id.* Plaintiff never responded or engaged in that interactive accommodation process. (*Id*. at 2-3; ECF No. 15, Ex. 11).  In the meantime, Plaintiff was allowed to continue on telework despite the expiration of his medical documentation.  (ECF No. 15, Ex. 1 at 6). Notably, Plaintiff's work performance continued to fall short of expectations for his position, as documented in a November 2020 counseling memorandum to him, and a December 2020 reminder memorandum. (ECF No. 15, Ex. 1 at 6; ECF No. 15, Ex. 12-13).

On December 7, 2020, Ms. Brown-Demery notified Plaintiff that upon the expiration of his doctor's note prescribing telework until mid-December, he should report to work on Tuesdays (one of the proposed accommodations) each week, beginning December 15, 2020. (ECF No. 15, Ex 1 at 6; ECF No. 15, Ex. 14).  Instead, on December 14, 2020, Plaintiff again responded to Ms. Brown-Demery's email with a doctor's note. (ECF No. 15, Ex. 1 at 6; ECF No. 21 at 4). This time, however, the doctor's note indicated that Plaintiff "may return to work/school on 1/11/2021." (*Id*;

3

ECF No. 15, Ex. 15)*.* The note made no mention of further teleworking. Accordingly, Plaintiff was placed on administrative/sick leave until the physician-designated January 11, 2021, report date. *Id*. On December 21, 2020, Plaintiff was issued another written reprimand for not following proper procedures for returning checks and making purchases. (ECF No. 15, Ex. 16). Plaintiff was also issued a mid-cycle performance rating of "unsatisfactory." (ECF No. 16, Ex. 17).

On January 11, 2021 – the date which his doctor indicated he could return to work – Plaintiff did not return to the office as expected. (ECF No. 15, Ex. 1 at 7; ECF No. 21 at 5). That afternoon, Ms. Brown-Demery emailed Plaintiff about his absence. *Id.* After the workday had ended, Plaintiff responded to Ms. Brown-Demery's email with a January 8, 2021, doctor's note specifically prescribing telework beginning January 8, 2021, lasting through February 8, 2021, as had his doctors' notes in the past. *Id.* He was issued a counseling memorandum for failing to use the proper call-in procedures for his January 11, 2021, absence. (*Id*; ECF No. 15, Ex. 20).

On January 13, 2021, Plaintiff's probationary period was rejected by DCAR based on poor performance. (ECF No. 15, Ex. 1 at 7; ECF No. 15, Ex. 21). As a result, Plaintiff was terminated, effective January 27, 2021 (the end of his probationary period established in July). *Id*. MDH's named causes for his termination included failure to follow appropriate procedures, poor judgment, and high error rate in performing duties. *Id*.

In his Complaint, Plaintiff claims that Defendant failed to accommodate his disability and he was discriminated and retaliated against due to his disability and requests for accommodation, resulting in his termination. (ECF No. 1). In the instant motion, Defendant maintains that Plaintiff's termination was a result of his documented inability to fulfill the essential duties of his position. (ECF No. 15, Ex. 1). As noted above, Defendant recounts numerous instances in which Plaintiff was trained, counseled, mentored, and reprimanded for his work-related mistakes. *Id.*

Ultimately, Defendant denies that disability played any role, as evidenced by the numerous accommodations granted to Plaintiff, and alternative accommodations offered to Plaintiff (about which Plaintiff failed to engage in any meaningful way).

For his part, Plaintiff argues that the relevant time period should not be his entire employment history, but instead should focus on the period after December 14, 2020.  (ECF No. 21 at 8).  Specifically, Plaintiff complains about Defendant's failure to engage in an interactive process for accommodation at that time rather than forcing him to take sick leave (pending the anticipated January 11, 2021, return recommended by his physician). *Id*. at 8-10. Plaintiff criticizes Defendant's reliance on his physician note suggesting a January 11, 2021, return date when he had made it known that he wanted to continue telework. *Id.* at 9. Finally, Plaintiff protests his termination when he failed to report to work on January 11, 2021 (and instead belatedly forwarded a January 8, 2021 physician note specifying further telework).  *Id*. at 8-11.

In support of this, Plaintiff offers little other than his own perceptions of Defendant's motivation for taking certain actions. For example, he characterizes Ms. Brown-Demery's involvement of Ms. Blake (ADA coordinator) and Ms. Jackson (Human Resources representative) as "targeting."  (ECF No. 21-2 at 3). Notably, this contention also pre-dates what Plaintiff himself terms the "relevant time period" by two months. He alleges that Ms. Brown-Demery had an "aggressive attitude towards him," resulting in her amplifying what Plaintiff terms "minor mistakes."  *Id*.  And he alleged outright refusals of other MDH employees to respond to requests for information or instructions, which are belied by the very documentation he attaches.  (*Id*.; ECF No. 21-5).

As set forth more fully below, even considered in the light most favorable to Plaintiff, the arguments and evidence fail to establish genuine disputes of material fact, entitling Defendant to Judgment as a matter of law.

## STANDARD OF REVIEW

Defendant has filed a Motion to Dismiss—pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6)—or, in the alternative, for Summary Judgment— pursuant to FRCP 56. (ECF No. 15). Defendant's Motion incorporates exhibits, including affidavits from MDH staff, employment description documentation, memoranda to Plaintiff, Plaintiff's medical notes, email correspondence between Plaintiff and staff, reprimand documentation, and termination paperwork. (ECF No. 15).

As a preliminary matter, the Court must determine whether to treat Defendant's Motion as one for dismissal or summary judgment. The FRCP are instructive.  The purpose of a Rule 12(b)(6) motion "is to test the sufficiency of a complaint and 'not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). A Rule 12(b)(6) motion "constitutes an assertion by a defendant that, even if the facts alleged by plaintiff are true, the complaint fails as a matter of law, to state a claim upon which relief can be granted." *Jones v. Chapman*, Civ. No. ELH-14- 2627, 2015 WL 4509871, at *5 (D. Md. Jul. 24, 2015).

In resolving a motion under Rule 12(b)(6), a court considers matters only within the pleadings. If, a party presents, and the court considers, matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see also*

*Humphrey*, 885 F. Supp at 136. The Court retains "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Verderamo v. Mayor & City Council of Baltimore*, 4 F. Supp. 3d 722, 729–30 (D. Md. 2014) (citations omitted). This Court elects to consider Defendant's exhibits (and Plaintiff's affidavits and exhibits pursuant to FRCP 56(d), *see* ECF No. 21, Ex. 1-5), and therefore will analyze the Motion as one for summary judgment.

FRCP 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a Rule 56 motion, the court must view the facts, and reasonable inferences drawn from the facts, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The moving party bears the burden "to demonstrate the absence of any genuine dispute of material fact." *Jones v. Hoffberger Moving Servs.*, 92 F. Supp. 3d 405, 409 (D. Md. 2015). A "dispute as to a material fact 'is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"[T]he party opposing summary judgment cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery. To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, 'for specified reasons, it cannot present facts essential to justify its opposition,' without needed discovery." *Smith v. McCarthy*, No. CV ELH-20-419, 2021

7

WL 4034193, at *8 (D. Md. Sept. 3, 2021) (internal quotations and citations omitted). "To justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be essential to [the] opposition." *Id.* (quoting *Scott v. Nuvell Fin. Servs.*, LLC, 789 F. Supp. 2d 637, 641 (D. Md. 2011)) (internal quotations omitted). "A nonmoving party's Rule 56(d) request for additional discovery is properly denied 'where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" *Id.* (quoting *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995)).

## ANALYSIS

Plaintiff brings three claims under Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"). (ECF No. 1) (citing 29 U.S.C. § 794). The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. To determine whether the Rehabilitation Act has been violated, the statute requires application of "the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210)." *Id.* Each of Plaintiff's claims is addressed in turn below.

### A. Count I: Failure to Make Reasonable Accommodations

Plaintiff's first claim alleges that MDH failed to make reasonable accommodations, as MDH did not "continue to engage in the interactive process" with Plaintiff, did not allow Plaintiff

to telework, and did not transfer Plaintiff to an available position within the MDH that "fit within [Plaintiff]'s work restrictions." (ECF No. 1 at 7). In his opposition, Plaintiff clarifies that the relevant time period for the above violation is December 14, 2020, through his termination in January of 2021. (ECF No. 21 at 8-11).

The Rehabilitation Act makes it illegal to "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C.A. § 12112(b)(5)(A). To establish a prima facie case against an employer for failure to accommodate, Plaintiff must show: (1) he had a disability within the meaning of the statute; (2) the employer had notice of his disability; (3) reasonable accommodations could have made it such that Plaintiff could perform the essential functions of the position; and (4) the employer refused to make such accommodations. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).

   1. *Disability Known to Employer*

As set forth in the Rehabilitation Act, "individual with a disability" is relevantly defined as one who "has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment." 29 U.S.C. § 705(20)(A)(i). Plaintiff asserts that he is asthmatic, obese, and pre-diabetic, all of which result in an impediment to employment, specifically during the COVID-19 pandemic given his increased risk for complications should he contract the disease.[1] (ECF No. 21, Ex. 2 at 1). Defendant argues that Plaintiff's disability was

---

[1] Although Plaintiff argues that these conditions limited his ability to walk long distances, ascend and descend stairs, and perform certain undefined tasks when "temperatures are high," he does not allege that any of those purported limitations were a necessary part of his job.

merely that of his own family and contends that Plaintiff's doctors' notes prescribed telework due to his mother's increased risk and predisposition to COVID-19. (ECF No. 15, Ex. 1 at 14-15). Nonetheless, Defendant does not necessarily contest that Plaintiff had a disability. Plaintiff's doctors' notes and submissions to MDH illustrate that some sort of accommodation was medically prescribed and MDH had notice of such impediment. Therefore, Plaintiff was at a heightened risk of complications should he contract COVID-19 which, at this stage, is sufficient to satisfy elements one and two.

### 2. *Refusal of Reasonable Accommodations*

Element three requires the Court first to determine the "essential functions" of Plaintiff's position at MDH, as well as what could have been considered a "reasonable accommodation" to perform said functions. To determine which functions are essential, consideration is afforded "to the employer's judgment" and "if an employer has prepared a written description ... for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); *Allen v. Baltimore Cty., Md.*, 91 F. Supp. 3d 722, 732 (D. Md. 2015). Defendant submitted a formal, written description of Plaintiff's Administrative Aide position, complete with a signed receipt and acknowledgment from Plaintiff (ECF No. 15, Ex. 3), an affidavit from Defendant's supervisor confirming the accuracy of such description (ECF No. 15, Ex. 2 at 1), performance notes highlighting those duties (ECF No. 15, Ex. 4), email communications from staff personnel discussing job functions (ECF No. 15, Ex. 6), memoranda outlining specific job functions (ECF No. 15, Ex. 12), and evaluation forms delineating job duties (ECF No. 15, Ex. 17).

Plaintiff's response does not address Defendant's assertions, aside from highlighting issues with the formatting of the provided job description, nor does Plaintiff offer statements or evidence of his own to detail his job functions or contradict those offered by Defendant. Accordingly, the

Court deduces from submitted exhibits that Plaintiff's position of Administrative Aide required, at the very least, the following essential functions: open and date stamp all mail immediately upon receipt; perform remote deposit; immediately submit documentation to MDH timekeeping; order supplies according to procurement guidelines; draft monthly hospital bank invoice letters; track vendor invoices; handle all invoices within an hour of receipt; prepare correspondence for refund requests; and prepare correspondence for checks to be returned. As noted above, Plaintiff was consistently unable to fulfill these essential functions.

Next, the Court turns to whether reasonable accommodations could have made it such that Plaintiff could perform these functions. Such determination requires the Court to consider the remainder of element three in conjunction with element four. "Reasonable accommodations", as outlined in elements three and four, are modifications to the work environment which enable a person with a disability who is otherwise qualified to perform the job functions. *Shivers v. Saul*, No. CV JKB-19-2434, 2020 WL 7055503, at *5 (D. Md. Dec. 2, 2020). In determining a reasonable accommodation, employers "have a good-faith duty to engage in an interactive process to identify" such accommodation. *Mullins v. Mayor*, No. TJS-14-2698, 2016 WL 4240069, at *10 (D. Md. Aug. 11, 2016). The interactive process begins when an employee "communicates h[is] disability and desire for an accommodation." *Id.* "[T]he denial of a request by a disabled employee could subject the employer to liability only if the requested accommodation was necessary in order for [him] to perform the essential functions of [his] job." *Id.* (internal quotations and citations omitted). Importantly, "[a]n employer may reasonably accommodate an employee without providing the exact accommodation that the employee requested." *Johnson v. Maryland Transit Administration*, No. CV CCB-19-2523, 2021 WL 809768, at *4 (D. Md. Mar. 2, 2021) (quoting

11

*Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 415 (4th Cir. 2015)) (internal quotations omitted).

For example, "if there is no vacant position for which the plaintiff qualifies, then failure to reassign the employee does not constitute a breach of the employer's duty to reasonably accommodate the employee's disability, if possible, through reassignment. It is the plaintiff's burden to show that a vacant position exists for which []he was qualified." *Fields v. Clifton T. Perkins Hosp.*, 605 F. App'x 200, 201 (4th Cir. 2015) (internal quotations and citations omitted). Nonetheless, "[a]n employer is not required to grant even a reasonable accommodation unless it would enable the employee to perform all of the essential functions of her position." *Willar v. Esper, No. CV GLR-19-2785*, 2020 WL 6784470, at *8 (D. Md. Nov. 18, 2020) (*quoting Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 581 (4th Cir. 2015)) (internal quotations omitted) (emphasis in original).

As an overarching argument, Defendant contends that while Plaintiff was on telework from May through December, such accommodation required MDH "to reassign some of his essential functions to other employees, including his supervisor." (ECF No. 15, Ex. 1 at 15). His contemporaneous performance records further show that while on his requested accommodation—telework—he was *not* consistently able to perform the essential functions of his position, yet remained employed for nearly a year.  As a result, MDH reasons, Defendant "went far beyond anything that the Rehabilitation Act required it to do in accommodating his claimed disabilities." *Id.*  In summary, Defendant argues that Plaintiff was granted his requested accommodation for the majority of his tenure, yet was not able to perform the essential functions of his position.

Further, as noted above, beginning in October of 2020, Defendant offered several potential alternative accommodations to Plaintiff, soliciting his input in consultation with his physician.

Plaintiff never responded to Defendant's invitation to engage in that process, beyond continuing to remain on telework, an accommodation which was at odds with his ability to perform his job effectively, as documented on many occasions by Defendant.

In opposition, Plaintiff's arguments direct the Court to the post-December 14, 2020, time period. (ECF No. 21 at 8). This, of course, ignores the months of accommodation that Defendant previously allowed, and Plaintiff's failure to engage with Defendant regarding offered alternative accommodations in any meaningful way. With regard to Plaintiff's specific complaints, Plaintiff argues that his physician note dated December 11, 2020 (ECF No. 15, Ex. 15), authored by the same health care providers as his previous notes, is somehow ambiguous, despite clearly documenting a return-to-work date of January 11, 2021, and notably omitting further need for telework. Additionally, Plaintiff ignores that, based on emails he himself attaches, Defendant informed him as early as December 14, 2020, that Defendant was relying on this medical documentation in establishing his expected return to work date of January 11, 2021 (and informing him that employees on approved medical leave are required to code their timesheets as "sick leave"). (ECF No. 21, Ex. 3 at 1). To the extent Plaintiff believed that Defendant erroneously interpreted his physician's recommendation, he took no steps to advise Defendant of this assertion until belatedly furnishing another physician note after working hours, after failing to report for work as expected on January 11, 2021. (ECF No. 15, Ex. 20). Thus, in addition to ignoring earlier attempts by Defendant to initiate an interactive process in October, Plaintiff's inaction between December 14, 2020, and January 11, 2021, caused Defendant to reasonably conclude that no further accommodation would be necessary after that date. Furthermore, and independent of telework, Defendant correctly notes that administrative leave is a reasonable accommodation. *See Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (paid or unpaid leave is a

reasonable accommodation for necessary treatment). Of course, documented inability to perform the essential functions of his position, while on his requested accommodation for months, also significantly undermines his argument.

As for Defendant's actions on January 11, 2021, after Plaintiff failed to report to work as expected, only providing medical support for continued telework after his shift ended (ECF No. 15, Ex. 20), the Court cannot ignore that Defendant in fact granted Plaintiff his requested accommodation for more than six months, yet Plaintiff consistently failed to fulfill the essential functions of his position as noted above. Plaintiff also fails to explain why he did not participate in the interactive process when accommodations were offered in October. Both the employee and employer bear a burden of engaging in the interactive process in good faith. *See Haneke v. Mid-Atlantic Capital Mgmt.*, 131 F. App'x. 399, 400 (4th Cir. 2005). Thus, "where it is the employee who refuses to engage in, or who causes the breakdown of, the requisite interactive process to determine a reasonable accommodation," the employer will not be liable. *Williams v. Virginia Polytechnic Institute and State University*, 451 F. Supp. 3rd 467, 377 (E.D.Va. 2020) (quoting *Maubach v. City of Fairfax*, 2018 WL 2018552, at *5 (E.D. Va. Apr. 30, 2018) (citing *E.E.O.C. v. Kohl's Dept. Stores, Inc.*, 774 F.3d 127, 132 (1st Cir. 2014)). The Court declines Plaintiff's admonition to ignore Defendant's efforts to initiate the interactive process in October 2020. Further, as observed by Defendant, Plaintiff "does not identify whether any vacancy existed for which he was qualified" (ECF No. 15, Ex. 1 at 8), nor did he request such reassignment as a reasonable accommodation, as he was required to do. *Fields*, 605 F. App'x at 20.

Finally, as to this count, the Court cannot conclude based on the affidavit of Plaintiff's counsel that more discovery is justified. Plaintiff offers nothing substantive in response to his

14

documented performance failures from the very outset of his employment (pre-COVID-19) through his termination at the end of his extended probationary period. Instead, he disputes the significance of those failures. Plaintiff claims he was improperly trained as he was only in the office for two months prior to the pandemic but also advances arguments centered on the proposition that teleworking was a reasonable accommodation that would allow him to adequately perform the essential functions of his position. Both cannot be true, especially in consideration of Plaintiff's documented poor performance during this period. The undisputed evidence shows that Plaintiff was repeatedly offered and granted reasonable accommodations throughout his employment and that Plaintiff failed to engage in an interactive process to explore other potential accommodations. The record is also clear that even when his requested accommodation was granted, Plaintiff could not perform essential elements of his position.

In sum, there is ample evidence that Plaintiff was not performing the essential functions of his position, and there is no specific and meaningful proffered evidence to the contrary so as to justify discovery. Given this information, it is simply not possible for Plaintiff to sufficiently prove the third and fourth elements of this claim. Accordingly, Defendant is granted summary judgment as to Count I: Failure to Make Reasonable Accommodations.

### B. Counts II and III: Discrimination/Retaliation (29 U.S.C. 794)

The elements to establish Counts II and III are similar and will be considered together. "To state a claim for discrimination under the Rehabilitation Act, a plaintiff must allege: (1) []he has a disability; (2) []he is otherwise qualified for h[is] employment; and (3) []he suffered an adverse employment action *solely* by reason of h[is] disability." *Walker v. Maryland Dep't of Info. & Tech.*, No. CV CCB-20-219, 2020 WL 6393435, at *7 (D. Md. Nov. 2, 2020) (citing *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015) (emphasis added)). Similarly, for

15

a retaliation claim, a plaintiff must allege:(1) the plaintiff "engaged in a protected activity; (2) the employer subjected [plaintiff] to an adverse action; and (3) the protected activity was causally connected to the adverse action." *Johnson v. Maryland Transit Administration*, No. CV CCB-19-2523, 2021 WL 809768, at *5 (D. Md. Mar. 2, 2021) (citing *Hooven-Lewis v. Caldera*, 249 F.3d 259, 272 (4th Cir. 2001)). Any initial showing of retaliation by a plaintiff can be overcome if a defendant has a legitimate, nondiscriminatory reason for its employment decision. In such cases, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for plaintiff's termination." *DeJarnette v. Corning, Inc.*, 133 F.3d 293-299 (4th Cir. 1998).

"An employee's request for reasonable accommodations is a protected activity." *Carter v. Montgomery Cty., Maryland*, No. CV TDC-18-2249, 2019 WL 3804765, at *3 (D. Md. Aug. 13, 2019). For purposes of the motion, the Court further accepts that Plaintiff has a disability, and his termination was an adverse action. In both discrimination and retaliation claims, the adverse action must be a result based on a plaintiff's disability or accommodation request for same. Where, as here, the record is undisputed that an employee was terminated due to his performance, and not because of his disability, no genuine issue of fact exists. *See Vorleamesi v. Esper*, No. PWG 20-CV-0442, 2021 WL 3681163, at *5 (D. Md. Aug. 19, 2021) (finding the record undisputed that Plaintiff was terminated for absenteeism and not because of her disability; holding summary judgment appropriate where Plaintiff makes conclusory assertions unsupported by the record and without establishing the presence of a genuine dispute).

As discussed above, Defendant has produced significant evidence of Plaintiff's inability to perform the essential elements of his position even when granted his requested accommodation

16

for months. Plaintiff's self-serving characterization of these failures as "minor" is simply not borne out by the contemporaneous documentation regarding Plaintiff's performance problems.

Plaintiff ultimately argues that he should be entitled to discovery and that Defendant "should not be allowed to hide behind written documentation and avoid having its employees subject to deposition examination." *Id.* at 11. Interestingly, Plaintiff does not deny his performance issues—only their significance. It is the perception of the decisionmaker that is important, not the employee's self-assessment. *See Merrill v. McCarthy*, 184 F. Supp. 3d 221, 246 (E.D.N.C. 2016). Further, Plaintiff's argument regarding a lack of training is belied not only by the documentation counseling him towards better performance, but also because he worked in his position for nearly a year.

Plaintiff's rebuttal falls short of convincing the Court that there is a genuine dispute as to a material fact. Plaintiff does not describe specific information not currently in his possession that would call into question any of the material facts set forth above so as to justify additional discovery. Although an opponent's "motive or intent" can provide such justification in the appropriate case, Plaintiff has not made that case here, especially where he must show that the various adverse actions alleged were motivated solely by his disability, but Plaintiff's poor performance pre-dated what he terms the relevant time period. Similarly, Plaintiff emphasizes the temporal proximity between the submission of his January doctor's note prescribing telework and his termination. (ECF No. 21 at 11). However, this ignores that the performance issues which ultimately resulted in his termination had been going on for months, that his requested accommodation had been in place for almost as long, and that his termination coincided with the end of his probationary period that was established well before the complained conduct. In the

absence of a genuine issue of material fact, Defendant is entitled to judgment on Counts II and II as a matter of law.

## CONCLUSION

For these reasons, Defendant's Motion to Dismiss or in the Alternative for Summary Judgment (ECF No. 15), treated as a motion for summary judgment, is GRANTED. A separate Order follows.

Date: December 22, 2021                                    _____/s/_____
                                                                                J. Mark Coulson
                                                                                United States Magistrate Judge